JERRY E. SMITH, Circuit Judge,
dissenting:
Federal courts have “neither the competency nor the resources to undertake to micro-manage the administration of thousands of state educational institutions.” Dorsett v. Bd. of Trustees, 940 F.2d 121, 123-24 (5th Cir.1991). Because the majority adopts too expansive a definition of protected speech for public employees-and thereby takes another step toward constitutionalizing the management of public schools-I respectfully dissent.
I.
I disagree with the majority’s characterization of the plaintiffs’s speech “as a matter of public concern.” When analyzing this question, a court should consider the “content, form and context of a given statement, as revealed by the whole record.” Connick v. Myers, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). While determinations of whether speech is a matter of public concern are necessarily fact-specific, the majority nonetheless departs from this circuit’s precedent. In particular, the majority fails properly to analyze the content of the plaintiffs’ speech and, in doing so, lowers the requirements for plaintiffs asserting similar causes of action.
A.
This circuit has never before held that an employee’s criticism of his immediate supervisor for mismanagement and job performance constitutes a matter of public concern. In fact, we consistently have refused to extend First Amendment protection to a public employee speaking in his role as an employee unless the speech “involves the report of corruption or serious wrongdoing.”[1] The *226 cited cases teach us that we should analyze the content of an employee’s speech about his supervisor for discussion of “serious wrongdoing.” This may include claims of sexual harassment or racial discrimination, for example, but should be more than simply criticisms of a supervisor’s job performance or management skills.
The plaintiffs seek protection for then-speech at the December 8, 1995, meeting related to questions of school management and budgetary allocations. More specifically, almost all their comments returned to the question of the ability of their direct supervisor, Porche, to lead the faculty and administer the school.
These facts distinguish this case from Tompkins, the most analogous fact situation cited by the plaintiffs. Here, the plaintiffs were discussing the management of their own school, whereas Tompkins had been criticizing the cancellation of a program at another school. Thus, the instant plaintiffs have a much greater personal stake in the consequences of their speech.
Additionally, Tompkins had alleged that the art program had been canceled for reasons of racial discrimination on the part of his superintendent; this obviously is a higher level of wrongdoing than is alleged here. Moreover, while the plaintiffs’ December 8 speech was not in relation to a threat of transfer or termination, it nonetheless focused exclusively on their direct supervisor’s role in the administration of the school and resembles an employment dispute more than does Tompkins’s general statement about school policy. In sum, the district court correctly followed this circuit’s precedent in holding that the content of the plaintiffs’ speech at the December 8 meeting does not rise to the level of “serious wrongdoing” that this court has required.
B.
The majority also relies on the “backdrop of widespread debate in the community.” But the district court found that there is little support for the plaintiffs’ argument that their criticisms of Porche had been made in the context of a larger public debate over Porche’s management of the high school. For instance, the court found that the single newspaper article offered by the plaintiffs did not raise any of the plaintiffs’ concerns about the management of the school or of its principal. It found no other evidence of widespread public debate other than inconclusive private communications between individual faculty members and the board of trustees. Therefore, the court properly refused to find that the plaintiffs’ comments were made “in the context of a continuing commentary that had originated in [a] public forum.” Tompkins, 26 F.3d at 607 (quoting Brawner v. City of Richardson, 855 F.2d 187, 192 (5th Cir.1988)).
II.
I agree with the district court that when reviewed together, the content, form, and context of the plaintiffs’ speech do not sufficiently involve a matter of public concern to the degree required to receive First Amendment protection. The form of the speech does not by itself establish that it involved a matter of public concern.[2] Moreover, the plaintiffs have offered little evidence to support their argument that there was widespread public debate on the matter. Most importantly, however, the content of the speech seems narrowly focused on the performance and conduct of their direct supervi *227 sor. Without alleging seriously wrong or corrupt conduct, the plaintiffs have little basis for claiming First Amendment protection.
The.Supreme Court created the “public concern” requirement to prevent “intrusive oversight by the judiciary in the name of the First Amendment.” See Connick, 461 U.S. at 147-48, 103 S.Ct. 1684. Previously, this court has followed these instructions by limiting the notion of public concern to eases of serious wrongdoing, so as to dissuade litigants from using, federal courts to settle employment and management disputes. The majority departs from this approach and unwisely expands the notion of public concern to include disputes between employees and their supervisors. Accordingly, I respectfully dissent.

. Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1050-51 (5th Cir.1996) (holding that speech about financial assistance and handling racial discrimination does not qualify as protected speech); see also Kirkland v. Northside Indep. *226 Sch. Dist., 890 F.2d 794 (5th Cir.1989) (reasoning that teacher's choice of curriculum does not qualify as "matter of public concern”); cf. Wilson v. UT Health Ctr., 973 F.2d 1263, 1266 (finding speech alleging sexual harassment a matter of public concern); Tompkins v. Vickers, 26 F.3d 603, 606 (5th Cir.1994) (finding speech alleging racial discrimination a matter of public concern); Benningfield v. City of Houston, 157 F.3d 369, 375 (5th Cir.1998) (finding speech alleging hostile work environment and tampering with criminal histories a matter of public concern).

. While I do not disagree with the majority's conclusion that the form of the plaintiffs' speech weighs in their favor, the fact that they were invited to speak does not necessarily create a "matter of public concern.” The other two factors — especially the content of the speech — are key to determining that the speech was not a matter of public concern.